# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs May 18, 2004

## STATE OF TENNESSEE v. HERBERT RUSSELL JOHNSON, Alias

**Direct Appeal from the Criminal Court for Knox County**
No. 73735     Mary Beth Leibowitz, Judge

_____

**No. E2003-02580-CCA-R3-CD**
**May 26, 2004**
_____

The defendant, Herbert Russell Johnson, appeals the revocation of his probation, arguing that the trial court erred in failing to consider further alternatives to incarceration before revoking his probation and ordering the reinstatement of his original sentence. Because the record reveals there was substantial evidence in support of the trial court's decision, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOE G. RILEY, J., joined.

Mark E. Stephens, District Public Defender, and Jamie Niland, Assistant Public Defender, for the appellant, Herbert Russell Johnson.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Patricia Cristil, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On November 7, 2001, the defendant pled guilty in the Knox County Criminal Court to two counts of forgery, one a Class D felony and one a Class E felony. The trial court sentenced him to consecutive terms of four years and two years, respectively, for an effective sentence of six years in the Department of Correction, but suspended both sentences, placing the defendant on supervised probation for a total of six years. Among other conditions of probation, the defendant was ordered to pay court costs and restitution. On April 25, 2002, the trial court amended the terms of the defendant's probation by ordering that he reside at Steps House, a drug treatment halfway house in Knox County.

On July 18, 2002, a probation violation warrant was issued alleging that the defendant had failed to pay his supervision fees for three months, to provide verification of the payment of restitution and court costs, and to reside at the halfway house as ordered. On January 9, 2003, the probation violation warrant was amended to reflect that the defendant had failed to comply with his probation officer's instructions to pay $100 he owed the halfway house and, therefore, was no longer at the residence. At some point thereafter, the defendant apparently reached an agreement whereby he was allowed to move in with his mother and have the supervision of his case transferred to the probation office in Jefferson County. Consequently, on May 8, 2003, the trial court dismissed the petition for revocation of probation.

On August 20, 2003, another probation violation warrant was issued alleging that the defendant was in arrears on his probation fees, owed three months of court costs, and had failed to report for two scheduled appointments with his probation officer. The warrant further alleged that the defendant had left his proposed residence, failed to return telephone calls to his probation officer, and that his current whereabouts were unknown.

A probation revocation hearing was held on September 25, 2003. Ann Little, a probation officer in Knox County, testified that she supervised the defendant from December 2002, following the retirement of his previous Knox County probation officer, Sue Littleton, until his case was transferred to Jefferson County in May 2003. According to Little's records, Littleton had filed a violation of probation report on the defendant on February 7, 2002, based on his failure to report in January 2002 and his February 4, 2002, positive drug screen for cocaine, and a second violation of probation report on May 23, 2002, based on his nonpayment of court costs and fees.

Little testified that, at the time she took over his case, the defendant was living with his mother in Jefferson County instead of at the halfway house because he owed the halfway house money he was unable to pay. She said the defendant was also experiencing difficulty in paying his court costs and fees. However, despite his financial difficulties, he showed some overall improvement, as he had secured employment, had not picked up any additional charges, and had tested negative on his drug screens.

Little testified that the defendant was "courtesy supervised" by Officer Montgomery, a Jefferson County probation officer, in April 2003 and that his probation violations were dismissed in May. After their dismissal, the defendant was officially transferred to Jefferson County, under the condition that he continue to reside with his mother. According to Little's records, the defendant reported as required in June but failed to report in July, missing two scheduled appointments. He also failed to pay his court costs and fees. In addition, Montgomery had learned from the defendant's mother that he had not lived at her residence since July 25, and she did not know his whereabouts.

The defendant testified he missed his July appointments with his probation officer because his truck broke down, leaving him stranded in Knoxville. While there, he struck up a conversation with a woman whose father had just had heart surgery at Fort Sanders Hospital and was in the

Intensive Care Unit ("ICU"). Because he had nowhere else to go, he stayed with the woman in the ICU lounge until her father was moved to a hospital room, at which point he stayed in the hospital room to care for the father while the woman "went to brain surgery" "[b]ecause she had a . . . car wreck and her heart fell out." Upon questioning by the trial court, the defendant clarified that the woman had gone to brain therapy, rather than brain surgery. The defendant testified that his truck was "ruined," and he had sold it during the time he was staying in the hospital.

The defendant acknowledged he made no attempt to contact his probation officer during his time in Knoxville and provided this further explanation for his stay: "I didn't do nothing. I just . . . I don't know, more less wanted to get away from the house for awhile since I was away from it." Later in his testimony, the defendant said that he had "wanted to do something besides work, work, work," but now realized he had to work. The defendant testified he could return to the same job, as his former employers were "wanting [him] to come back." He said that, if the trial court should return him to probation, he would remain in his mother's home, travel only to and from work, and have his mother send in his court costs and fees for him, because he knew he had "to do right this time." He also said that he was willing to go to a halfway house if the trial court chose to make that a condition of his probation.

At the conclusion of the hearing, the trial court declared the defendant a technical violator, finding that he had violated the terms of his probation by absconding to Jefferson County, failing to report as scheduled to his probation officer, and failing to let anyone know his whereabouts. The trial court further found that, given his history, the defendant would be unable to successfully complete a term of supervised release. Accordingly, the trial court revoked the defendant's probation and ordered that he serve his original sentence in incarceration, but subject to any early release or credits his technical violator status should allow.

## ANALYSIS

The defendant argues that the trial court abused its discretion in revoking his probation. He concedes that he violated the terms of his probation by his failure to reside at his stated residence, to report for his scheduled probation meetings, and to contact his probation officer, but contends that the first two violations resulted from his broken truck and his financial difficulties, rather than a wilful refusal to comply with the terms of probation. The defendant asserts that he was in compliance with the terms of his probation before his truck broke down in Knoxville and argues that, in light of his nonviolent offender status and the technical nature of his violations, the trial court should have used less restrictive measures than incarceration, such as imposing closer supervision and more onerous conditions of probation, to address his failure to report. The State argues that the trial court acted within its discretion in revoking the defendant's probation and ordering him to serve his sentence in confinement.

Tennessee Code Annotated sections 40-35-310 and 40-35-311 grant the trial court the power to revoke a suspended sentence and to reinstate the original sentence if the court finds by the preponderance of the evidence that the defendant has violated the terms of his or her probation and

suspension of sentence. Tenn. Code Ann. §§ 40-35-310, -311 (2003). The revocation of probation lies within the sound discretion of the trial court. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991); State v. Stubblefield, 953 S.W.2d 223, 226 (Tenn. Crim. App. 1997); State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). To show an abuse of discretion in a probation revocation case, "a defendant must demonstrate 'that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred.'" State v. Wall, 909 S.W.2d 8, 10 (Tenn. Crim. App. 1994) (quoting State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)). We review this issue, therefore, for an abuse of discretion.

The trial court considered the defendant's argument that he should be returned to probation with more restrictive conditions imposed, including his proposal that he be required to live again in a halfway house, but found that, based on his history, he stood little chance of successfully complying with the conditions of a suspended sentence:

> Well, of course, that's what we've done on several occasions. We required him to stay at Steps House, and he did work, but he didn't pay, and he didn't stay at Steps House. And then we did our best to find him his opportunity to get back to Jefferson County so that he could live with his mother, which is what he wanted. And as the General just pointed out, [the defendant] decided to take his life in his hands, and he went and lived at Fort Sanders Hospital with strangers in the ICU, didn't tell Mr. Montgomery. Nobody knew where [the defendant] was. If they did know where [the defendant] was, nobody told the appropriate authorities.
>
> He's really - - [the defendant] at times has done pretty good when he wanted to do, but I don't think [the defendant's] ever been able in - - even in Ms. Littleton's time, I think, they helped him as much as they could, and Ms. Little has too, to get through regular probation. Anything that's been more required of [the defendant], he's never been able to do. And, I think - - I think asking him to do those things now is just setting him back up to go back through this.

The trial court additionally noted that the defendant had obviously managed to communicate with someone in order to sell his truck while he was in Knoxville and, thus, could reasonably have been expected to telephone his probation officer, had he desired to do so.

The preponderance of the evidence clearly shows that the defendant violated the terms of his probation by leaving his mother's residence, missing his scheduled probation meetings, and failing to contact his probation officer. Although the defendant argues that he lacked the financial resources to return to Jefferson County, he had, according to his own testimony, sold his truck while in Knoxville, which presumably would have placed some resources at his disposal. Moreover, he admitted that at least one reason for his continued absence was his dissatisfaction with the daily grind

-4-

of work and his desire to get away from his mother's house. The defendant further admitted that he had no excuse for his failure to telephone his probation officer to let him know his current whereabouts and situation. The record reflects that more stringent conditions of probation, including placement in a halfway house, have already been attempted with the defendant, to no avail. Under these circumstances, we find no abuse of discretion in the trial court's revocation of the defendant's probation and reinstatement of his original sentence.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE